NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0540n.06
Filed: September 3, 2008

No. 06-2194

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TAMI WOODWORTH SALENS, Ancillary and Personal Representative of the Estate of Keith George Church, deceased, | ) ) ) ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| v. | ) ) | EASTERN DISTRICT OF MICHIGAN |
| JACQUELINE TUBBS, | ) ) ) | |
| Defendant-Appellant. | ) | |

Before: MOORE and COOK, Circuit Judges, and ADAMS,[*] District Judge.

COOK, Circuit Judge. Jacqulyn Tubbs[1] appeals *pro se* from an adverse grant of summary judgment in this diversity action for breach of implied contract.

Appellee Tami Woodworth Salens, Ancillary and Personal Representative of the Estate of Keith George Church, deceased, filed a complaint against Tubbs claiming breach of implied contract, unjust enrichment, and conditional gift, seeking monetary and declaratory relief. The district court initially denied Tubbs's motion for summary judgment, but later modified its order following

---

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

[1]Jacqulyn is the correct spelling of defendant Jacqulyn Tubbs's first name, which was incorrectly spelled as Jacqueline by plaintiff when she filed this case.

supplemental briefing, granting summary judgment in part to the Estate and in part to Tubbs. Thereafter, the district court entered a judgment resolving all of the claims in the litigation. For the reasons that follow, we affirm the district court's judgment.

I.

Appellee's decedent, Keith George Church, a citizen of the United Kingdom, and Tubbs, a Michigan resident, began communicating over the Internet in the fall of 1999. Thereafter, Church and Tubbs developed a long-distance relationship built on written correspondence, telephone contacts, and several in-person visits. Church and Tubbs became engaged in February 2000, planning to be married in Las Vegas in July 2000. Two months before the engagement, Church paid off $4,100 of Tubbs's credit card debt. He also gave Tubbs an engagement ring that he purchased for $7,274.42 in February 2000. On March 15, 2000, he deposited $194,852.56 in Tubbs's bank account to fund the purchase of land and a residential home located at 3865 S. Sandusky Road, Peck, Michigan. Tubbs testified that she did not supply any money for the purchase of the home and that Church instructed her to place title in both of their names. In April 2000, the real property was conveyed to "Keith G. Church, a single man and Jacqulyn J. Tubbs, a single woman as joint tenants." Church later delivered certain personal belongings to the Michigan home, including a family heirloom diamond ring worth $4,560. Tubbs moved into the home in April 2000.

On June 5, 2000, Tubbs e-mailed Church stating that their relationship was over and that the rings and paperwork on the house were in her attorney's possession. According to Tubbs, she was

horrified after seeing Church's "bizarre and abnormal behavior" on the Internet. He led a "risque lifestyle as a cross[-]dresser and bi-sexual." (Appellant's Br. 2) Tubbs rejected Church's demands to repay the $4,100 and to return the engagement ring, his personal property, and her interest in the Michigan home. On July 24, 2000, Church died in England.

Over four years later, Church's Estate filed a diversity suit seeking to recover the property Tubbs refused to return. Tubbs moved for summary judgment, and the district court denied her motion, prompting responsive supplemental briefing. Thereafter, the district court entered an amended order granting summary judgment *sua sponte*, in part to the Estate and in part to Tubbs. Because this amended order left the claim for damages unresolved, this court rejected as premature an appeal of that non-final order. Following an off-record telephone conference with counsel for both parties, the court entered a final judgment entitling the Estate to: the rings or a money judgment for their values; the real property, partitioned as a matter of law to account for its appreciation; complete right, title, interest, and possession of the land and residential home, free and clear of any claim, right, title, or interest of Tubbs; and a money judgment in the amount of $75,000 (the amount of Tubbs's home equity mortgage), less credits to Tubbs of $13,000 for property taxes she paid from 2000 through 2005, or a modified money judgment in the amount of $62,000. The district court ruled that under the probate exception to diversity jurisdiction, it lacked federal subject matter jurisdiction to decide whether a provision of Church's will released the alleged $4,100 debt; the court therefore granted summary judgment to Tubbs for this claim. This appeal followed.

II.

For her *pro se* appellate arguments, Tubbs says that the district court only considered when the gifts were made, ignoring Church's misconduct during the engagement and after the relationship was over. Church's responsibility for the broken engagement, she reasons, should preclude his estate from recovering the gifts and home. She also denies any express or implied contract between Church and her for repayment or return of the property if the marriage did not take place.

A. *Standard of Review*

We review de novo a district court's grant of summary judgment. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 482 (6th Cir. 2008). Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

We note that Tubbs does not challenge the district court's procedural decision to enter summary judgment for the Estate *sua sponte*. If she had, we would find no procedural error because

Tubbs had ample notice and opportunity to respond to the prospect of summary judgment. After all, it was she who first moved for summary judgment, setting off a deluge of cross-briefing from the parties. As we have said, granting summary judgment "in favor of an opposing party when one party has made a motion for summary judgment . . . may not be as detrimental since the moving party is at least aware that the issue has been raised." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 105 (6th Cir. 1995). Tubbs filed two briefs even after the district court denied her motion for summary judgment, and the court responded to these arguments with an amended order. Tubbs did not object on either lack-of-notice or opportunity-to-respond grounds. As the only deponent, Tubbs could readily marshal the evidence and address all the issues considered by the court, so the court acted well within its discretion in deciding to grant summary judgment against her and for the Estate.

B. *Engagement Ring*

Tubbs received a $7,274.42 engagement ring from Church, but testified that she no longer possessed it; she "threw it over the bridge in Elk Creek River."

Tubbs acknowledges that Michigan law categorizes engagement rings as conditional gifts, rather than outright gifts, because of their symbolic weight. In *Meyer v. Mitnick*, 625 N.W.2d 136 (Mich. Ct. App. 2001), the Michigan Court of Appeals held that "[b]ecause the engagement ring is a conditional gift, when the condition is not fulfilled the ring or its value should be returned to the donor no matter who broke the engagement or caused it to be broken." *Id*. at 139. That is, a

"determination of who owns the engagement ring following termination of the engagement does not require a determination of which party was at fault." *Id*. at 137. The district court thus properly determined that the Estate is entitled to recover the engagement ring or its $7,274.42 value from Tubbs as a matter of Michigan law.

### C. *Real Property*

Tubbs correctly observes that the Michigan courts have not yet decided whether conditional gift principles apply to real property conveyances. In diversity cases, the federal court must apply state law in accordance with the controlling decisions of the state's highest court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938). If the state's highest court has not addressed the issue, the federal court must attempt to ascertain how that court would rule if it were faced with the issue. *United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 917 (6th Cir. 2002) (citing *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*, 831 F.2d 596, 608 (6th Cir. 1987)). The federal court looks to all available data, including the decisional law of the state's lower courts, the majority rule of other jurisdictions, restatements of law, and law review commentaries in making this determination. *Id*.

Predicting how the Michigan Supreme Court would rule if it were faced with the issue, the district court held:

Consistent with *Meyer*, *Tyranski* [*v. Piggins*, 205 N.W.2d 595, 596–97 (Mich. Ct. App. 1973)], and *Featherston* [*v. Steinhoff*, 575 N.W.2d 6, 9 (Mich Ct. App. 1997)],

as well as the out-of state cases cited by Estate, this court finds that, if faced with the issue, the Michigan Supreme Court would hold that a gift of real property made in contemplation of marriage to the anticipated donee spouse may be enforced as a conditional gift that must be returned to the donor upon proof of an express or implied in fact contract.

Appellant's JA 199–200.

As the cases cited by the district court confirm, at least three courts have restored the entire property interest to an ex-partner who incurred the full down payment and other initial expenses of home ownership. *See Nicholson v. Johnston*, 855 A.2d 97 (Pa. Super. Ct. 2004) (holding that the down payment and settlement costs paid by one joint tenant of real estate constituted a conditional gift to the other joint tenant, his fiancée, contingent upon a marriage occurring); *Fanning v. Iversen*, 535 N.W.2d 770 (S.D. 1995) (awarding the entire interest in the real estate to the tenant in common who made the full down payment in contemplation of marriage); *Aronow v. Silver*, 538 A.2d 851 (N.J. Super. Ct. Ch. Div. 1987) (same).

And these cases provide no support for Tubbs's view that fault ought to bear on the right to retain gifts of real property made in contemplation of marriage. For example, in *Aronow*, a New Jersey court declined to inquire into fault, reasoning: "It does not matter who broke the engagement. A person may have the best reasons in the world for so doing. The important thing is that the gift was conditional and the condition was not fulfilled." *Id.* at 852 (internal quotation marks and citation omitted). The court held that upon the termination of an engagement, gifts made in contemplation of a called-off marriage should be returned to the donor; accordingly, it awarded the

entire interest in a condominium to a tenant in common who had made the entire down payment in contemplation of marriage. Given the trend of other jurisdictions holding that a gift of real property made in contemplation of marriage to the anticipated donee-spouse is a conditional gift, and Michigan's no-fault approach to engagement rings, the Michigan Supreme Court could reasonably be expected to extend that approach to other premarital gifts.

The critical question then, as noted by the dissent, is whether Tubbs's summary judgment evidence raised a genuine issue of material fact as to whether Church's gift of the real property created an implied-in-fact contract conditional upon marriage. That is, did Tubbs present any evidence to contradict the Estate's showing that Church bought the real estate intending her to retain the deeded half-interest only if she married him? Construing the summary judgment evidence in her favor, as we must, we conclude that she did not.

Ample evidence suggests that the gift of the real property was conditioned upon the marriage of Tubbs and Church. Church paid the full purchase price, while Tubbs paid nothing. When deposed, Tubbs testified that both she and Church intended the property to serve as a marital home, describing it as "a place for me and [Tubbs's daughter] and him to live." Indeed, her testimony consistently referred to the couple living *together* in the home. One example: "[W]hen we got married, you know, that this was our home and that I was to keep it up." Appellee's JA 110. Another is found in an e-mail Tubbs sent Church after they bought the home:

> You made the decision to propose to me when you did, and also about buying the home when you did, because it was . . . just what we wanted in a home only thing is you had to purchase it right away to get it, or wait to find something else later, and you and I decided this was it. And it is a lovely house and I'm sure we both will be very happy *when we do someday move into it and make it our home.*

Appellee's JA 141 (emphasis added).

On the other hand, Tubbs provides little to no evidence that the property was an outright gift. She gains no ground with the argument that Church's understanding of joint tenancy law—i.e., that property passes to a joint tenant upon the co-tenant's death—supports her claim of an unconditional gift. At the time the parties specified how the real property was to be titled, Church assumed the marriage would take place.

In disagreeing with the grant of summary judgment, the dissent detects a lingering factual issue from a few equivocal statements in Tubbs's deposition testimony. The first statement came when counsel for the Estate asked, "Would it be a fair statement to say . . . that the placing of the title in your name was conditional upon your marrying him?" Tubbs responded, "Well, we were going to get married, yes." Appellee's JA 116. When counsel then used her response in posing his next question: "So, that was a condition of putting your name—, " Tubbs interrupted, "No, it wasn't a condition. He just wanted my name on it and we, at some point, we were going to get married. But there was no condition. I mean, sure, I planned on marrying him, I loved him." Appellee's JA 116.

The dissent reads this exchange as evidence that Church intended to give Tubbs the house as a gift, but we read it as Tubbs stating a legal conclusion—that the property was not a conditional gift—and then undermining that stance with a further elaboration, which paired the joint deed and the intent to marry.

When questioned further by Estate's counsel, Tubbs not only failed to offer any specific, supporting facts, she essentially retreated:

> Q:    So, wouldn't it be a fair statement to say this was a condition of having your name on the deed?
>
> A:    I can't answer that.
>
> Q:    But assuming you weren't going to marry him, he would not have put your name on the deed, would he?
>
> A.    I don't know.  I don't know what he was doing the whole time because he ended up to [be] a big liar about everything.  So, I have no idea.  I just can't answer that.

Appellee's JA 117.

Even if Tubbs had not retreated on her argument that Church gave her the property unconditionally, she would still need specific supporting facts to forestall summary judgment. *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("In order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations. . . . Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment."); *Stalbosky v. Belew*, 205 F.3d 890, 895 (6th Cir. 2000) (vague and conclusory statement insufficient

to counter a motion for summary judgment); *Summerville v. Ross/Abbott Labs.*, 187 F.3d 638, at *4 (6th Cir. 1999) (table) (conclusory allegations in affidavit were not sufficient to withstand party's motion for summary judgment).

The dissent espouses just the sort of "metaphysical doubt," *Matsushita*, 475 U.S. at 586, or "mere existence of a scintilla of evidence," *Anderson*, 477 U.S. at 252, that should not preclude summary judgment. Given the state of the record before the district court, no "reasonable jury could return a verdict for [Tubbs]," making this case appropriate for summary-judgment resolution.[2] *Id.* at 248.

D. *Other Personal Property*

Tubbs contends that Church's other gifts of personal property too were unconditional. But other than generally attacking the no-fault approach, Tubbs fails to develop any arguments to challenge the determination that Church's personal-property gifts depended on the couple's marriage. We thus affirm the district court's judgment that the Estate is entitled to recover from Tubbs any of Church's personal property stored within the Michigan home, including a $4,560 family heirloom diamond ring or its value.

---

[2]We join the dissent in noting that the district court articulated the wrong standard when it said that the Estate "presented sufficient facts to support a finding" of a conditional agreement. *Salens v. Tubbs*, No. 2:2004cv75069, at 10 (E.D. Mich. Mar. 7, 2006). Reversal is not warranted, however, because the district court supplied the correct formulation when it said that "a federal district court may grant summary judgment . . . where, as here, there is no genuine issue of material fact." *Id*. at 4.

III.

For these reasons, we affirm the judgment of the district court.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** I am writing in dissent because I think that Tami Woodworth Salens ("Salens"), representing the estate of Keith George Church ("Church"), has not satisfied the summary-judgment standard with respect to her claim regarding the disputed real property. The district court erred in awarding summary judgment sua sponte in favor of Salens, and the majority erroneously affirms that award.

The majority appears to agree with the district court's prediction that, that "if faced with the issue, the Michigan Supreme Court would hold [in accordance with the trend in other jurisdictions] that a gift of real property made in contemplation of marriage to the anticipated donee spouse may be enforced as a conditional gift that must be returned to the donor upon proof of an express or implied in fact contract." Dist. Ct. Order of 3/7/06 at 9. I do not disagree with this prediction, but I note that the extension of the conditional-gift doctrine from the gift of an engagement ring to the gift of other forms of property involves a subtle shift in analysis. The Michigan Court of Appeals follows other jurisdictions in viewing the gift of an engagement ring as categorically conditional because of the symbolic meaning of the ring. *Meyer v. Mitnick*, 625 N.W.2d 136, 139 (Mich. Ct. App. 2001). By contrast, to determine whether other types of gifts made during the engagement period are similarly conditional, even though they lack the inherent symbolism of an engagement ring, courts evaluate the circumstances and intentions surrounding these gifts. *See, e.g.*, *Nicholson v. Johnston*, 855 A.2d 97, 102 (Pa. Super. Ct. 2004); *Aronow v. Silver*, 538 A.2d 851, 852-54 (N.J. Super. Ct. Ch. Div. 1987). Thus, the inquiry into whether Church made the gift of the real property to Jacqueline Tubbs conditional on their marriage involves a factual as well as a legal determination.

*Salens v. Tubbs*
No. 06-2194

We must review the district court's grant of summary judgment sua sponte according to two distinct standards. "The substance of the district court's decision is reviewed de novo under the normal standards for summary judgment." *Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000). "The district court's procedural decision to enter summary judgment sua sponte, however, is reviewed for abuse of discretion." *Id.* "[A] district court may enter summary judgment sua sponte in certain limited circumstances, 'so long as the losing party was on notice that [it] had to come forward with all of [its] evidence.'" *Id.* (quoting *Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999)).

In the circumstances of this case, although the district court satisfied its procedural burden, I believe that from a substantive perspective the district court erred in granting summary judgment on Salens's claim regarding the real property. As the majority explains, because Jacqueline Tubbs ("Tubbs") herself had first moved for summary judgment Tubbs had notice that she should present all her evidence. Therefore, the district court did not abuse its discretion in considering summary judgment. The majority opinion and the district court, however, mistakenly have taken the facts in the light most favorable to Salens and have wrongly concluded that if Salens has produced sufficient evidence to find in her favor, then summary judgment for Salens is appropriate.[1] "Summary

_____

[1]Although the majority in its footnote 2 purports to distance itself from this mistake, the tenor of the majority is to view the evidence in the light most favorable to Salens and to minimize the weight of Tubbs's testimony.

-14-

judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 363 (6th Cir.), *cert. denied*, --- U.S. ---, 128 S. Ct. 201 (2007); Fed. R. Civ. P. 56(c). Because Tubbs is treated as the nonmoving party in this case, when we are reviewing a sua sponte grant of summary judgment for Salens, we are obligated to take the facts in the light most favorable to Tubbs. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 816-17 (6th Cir. 1996) (determining that a sua sponte grant of summary judgment to the party treated as the moving party "was not proper because, taking the evidence in the light most favorable to the [party treated as the nonmoving party], there [we]re genuine issues of material fact").

The critical question is whether Tubbs has created a genuine issue of material fact that Church's gift of the real property did not create an implied-in-fact contract, in which the gift was conditional upon Tubbs and Church's marriage. The evidence militating in favor of a finding that the real property constituted a gift from Church to Tubbs conditional upon their marriage includes the facts that Church paid for the purchase of the property and that Tubbs did not supply any financial consideration for the property. Furthermore, Tubbs testified at her deposition that both she and Church intended the property to serve as a marital home: "The only thing that was discussed about this is that when we got married, you know, that this was our home and that I was to keep it up." J.A. at 110 (Tubbs Dep. at 44).

Evidence also exists, however, that Church intended the home as a gift, independent of his future marriage to Tubbs. The following exchange at Tubbs's deposition took place between counsel for Salens and Tubbs:

> Q. Would it be a fair statement to say, so there is no question[,] that the placing of the title in your name was conditional upon you marrying him?

> A. Well, we were going to get married, yes.

> Q. So, that was the condition of putting your name—

> A. No, it wasn't a condition. He just wanted my name on it and we, at some point, we were going to get married. But there was no condition. I mean, sure, I planned on marrying him, I loved him.

J.A. at 116 (Tubbs Dep. at 50). Tubbs's answers show both that she anticipated marrying Church and that Church gave her the house as a gift, but do not show that Church conditioned the gift of the house upon their marriage. In response to further questioning by Salens's counsel, Tubbs reiterated that she did not believe Church made a conditional gift of the real property:

> Q. So, wouldn't it be a fair statement to say this was a condition of having your name on the deed?

> A. I can't answer that.

> Q. But assuming you weren't going to marry him, he would not have put your name on the deed, would he?

-16-

> A.   I don't know.   I don't know what he was doing the whole time because he ended up to [be] a big liar about everything.   So, I have no idea.   I just can't answer that.

J.A. at 117 (Tubbs Dep. at 51).   Though they do not lack ambiguity, the above exchanges amount to evidence that, according to Tubbs, the gift of the house was not conditional.

Furthermore, Tubbs's testimony shows that Church knew the consequences of joint tenancy when he decided to include Tubbs's name as well as his own on the title to the property.   Tubbs testified that real-estate agents "explained everything in these papers to [Church] before he signed. . . . they wanted to make sure that [Church] knew . . . what he was doing and he said, yes, this is how it's going to be written up." J.A. at 112 (Tubbs Dep. at 46).   Tubbs subsequently testified that the real-estate agents explained "that over here [in the United States] if there were two names on a deed, two names on a deed and one passed away, it goes to the other one.   He [Church] knew everything." J.A. at 118 (Tubbs Dep. at 52).   Finally, Tubbs denies ever encouraging Church to include her name on the title, on the basis that they would soon be married.   In conclusion, although the evidence suggests that Church made the gift of the real property in part motivated by the fact that he purported to love Tubbs and was engaged to her, the evidence is not conclusive that Church made the gift of the home conditional upon the eventuality of his marriage to Tubbs.   *See Aronow v. Silver*, 538 A.2d 851, 852-53 (N.J. Super. Ct. Ch. Div. 1987) (quoting with approval the holding of *Albanese v. Indelicato*, 51 A.2d 110, 110-11 (N.J. D. Ct. 1947), that although a plaintiff would not have given the defendant a "dinner ring" had they not been engaged, the "dinner ring" constituted simply "a

token of the love and affection which plaintiff bore for the defendant" and did not constitute an impliedly conditional gift because the ring lacked the inherent "symbolic meaning" of an engagement ring).

The majority's feeble response that all of this is merely a scintilla of evidence should be recognized for what it is—a blatant weighing of the evidence that is appropriate only for the trier of fact. Tubbs has created a genuine issue of material fact that Church did not condition the gift of the home upon their marriage. The district court erred in granting summary judgment to Salens on her claim regarding the real property and the majority compounds that error by affirming.

In conclusion, I would reverse the grant of summary judgment for Salens regarding the disputed real property and remand for further proceedings. Therefore, I dissent.